to 24.3073.Y.S. v. New York City Department of Education. Mr. Collins. Good morning, Your Honors. May it please the Court. We're here to discuss eight issues today that have in total nine reversible errors by my count. And I'd like to start off with one of the top ones on the statute of limitations that it was impermissible as a conclusion for the district court to conclude that this was time-barred after having both stated that the law would not recognize this as a claim, as an act of omission per se, as a denial of faith, where there was simply not an IEP. Rather, the court went on to say that there still needs to be something actionable about the absence of an IEP. And in this case, it was impossible to have a claim without the independent educational evaluation, which the parent wasn't even informed that she was able to receive until June of 2020. But isn't that the point, that you've got your separate claim that says because of these delays, that's a procedural violation that led to a denial of faith, right? And then you have the separate claim that says I didn't have a formal IEP during this period. And I understood the district court to be saying, yeah, but, like, that's kind of the IEP is a shell that holds a bunch of services. And so what matters is whether the services that were being provided during that period amounted to a fair and appropriate education, or free and appropriate education, sorry, a faith. Why does the very not existence of an IEP really move the ball forward, rather than just focusing on the many substantial claims that you've made sort of as to the substance of the services being provided? Well, part of what the court cited to was that having the IEP in place was meant to know what services are supposed to be there. If the parent doesn't know that these are the services that the student needs and these are the services that are not needed any longer, then it's difficult to say whether or not that's actually a denial of faith. Well, what would the relief be for the bare absence of an IEP? You wouldn't be able to determine that until you have the evaluation saying, here are our recommendations, and the school is actually able to look at this and say, yes, here's our recommendation based on what we know about the student. So you have that as a separate claim, right?  You have it as a separate claim. There's been this delay. They didn't mail the decision from January 2020 when they were, whatever the year was. They didn't mail the decision timely to us. And so we were delayed in getting the IEEs, and then that delayed our knowledge of what services were needed and our ability to make those claims. Why isn't that where the action is in this case rather than the bare absence of an IEP? We believe that part of that was a misreading by the IHO and SRO, and so it became more jumbled together as we're trying to parse out that, okay, the absence of an IEP itself is a discrete and actionable offense. What would the remedy for that be? The absence itself. I'm sure trying to follow on Judge Robinson's question, that isn't the remedy to provide the services that you've separately challenged the lack of? Typically it would be to determine what, under the evaluations, the student should have been receiving prior to the evaluations being conducted, and then experts come in and say, we believe that these are the deficits caused by not having the IEP, and this is the type of compensatory education the student would receive based off of that. Okay, so it's your position that there may, even though you've brought a variety of claims regarding the substantive lapses, the failure to provide, that there may be services to which the student was entitled that you are simply unaware that they needed or should have gotten. Is that the claim? And that's what the absence of the IEP triggers? Because I didn't see that as a distinct claim, that it could be that the student needed some other form of services that haven't even been discussed. Is that the theory? Well, it's also whether or not the student needed these, and throughout this entire time period up until the IEEs, the school district continuously said through really a consensus of its own experts that you're not supposed to, or the student doesn't need bilingual speech-language therapy. And that's what their speech-language pathologist kept saying. That's what the teachers kept saying. And I would say that by the time we got these IEEs, then now we have an expert saying, okay, you need about two years' worth of services to make this up. Right. As to the speech-language therapy, though, the court actually considered that expert, and whether there were compensatory speech-language services that would have been appropriate because they should have been provided during that period. And the court concluded that the answer to that was no. And we can debate whether that was sufficiently supported by the evidence, but that issue is sort of out there on the table in the context of a claim you've made about that issue. I'm struggling with why you would lead with, I think of the IEP claim as kind of an empty shell claim. And the substantive claims that you're making, I think, involve academic program, speech-language services, and then PT. Those were the three sort of components of the October 2020 IEP that were impacted by the delay in getting these IEEs. Isn't that where the action is? It is. Because this does become a bit of a moving target under Trumbull, where what you're really looking at is that first you have the IE that has to come about, and then under the order that provided the IE to the family, then the next IEP is supposed to be created after that. So really the school district could have said much earlier that, you know, here's the order from the prior IHO, and we're going to allow you to go have these IEEs conducted, and then that triggers the time for an IEP to be created. And I see that I'm out of time. If you'd like me to continue. We're going to get the ear from you again. So why don't you take a seat, and we'll talk to your counterpart over there and hear from you shortly. Good morning, Your Honors. May it please the Court, Jennifer Lerner on behalf of FLE, New York City Department of Education. I think I'd like to start just a little high level. Judge Robinson, you just pointed out that the issues here are the academic tutoring, bilingual speech-language therapy, and physical therapy, which I'll note is not at issue here. The parent asked for 15.5 hours, and that was ultimately awarded. So rather than launching into all the different claims of error, I think it's important to look at what exists now based on the IHO's order and the SRO's order. As you know, and as the district court found, we have a deferential standard here. We have very thorough decisions, and we believe there's not any reason to change what has been found already. Can I ask you, let me tell you the thing that I'm most struggling with in this case. Sure. A bunch of claims, and one of the claims arose from the delay in the IEEs. And again, that's a claim primarily for compensatory relief, because at this point all that stuff's been folded into prospective IEPs. And the district court looked at that, because the SRO had said, oh, that's an impermissible challenge to the enforcement of that other claim. And the district court looked at that and said, no, that's actually not what it is. It's an allegation of a procedural violation, but that in itself doesn't necessarily get you anything, because you then have to show, A, that there was a procedural violation, and B, that as a result of that procedural violation, you were denied a fair and a favor. And the court specifically acknowledges that YS alleged that the failure rendered the IEP inadequate by obscuring YS's purported needs for certain academic interventions as well as bilingual SLT and PT services. The court is thus compelled to reverse the SRO determination and remand for the SRO to address these issues. And at that point, the court said, I want you to look at all three of these. Somewhere along the line, somebody got the idea, because on a separate issue, the court had honed in only on the PT, namely the specific challenges to the IEP. And the court said, yeah, that challenge is still alive on remand only insofar as you conclude that the delay affects it. Somebody must have gotten the idea, including the SRO, that the very clearly and expressly remanded issues about the impact of the delay on the SLT and academic offerings provided in the IEP was a matter for remand. Am I missing something, or did everybody fail to litigate something that was specifically remanded to the SRO, and should we be setting it back for that purpose? I believe, and I understand what Your Honor is talking about, in the district court's opinion, and there are different places where the court addresses the scope of the remand. And I believe, and I'm going to grab the opinion. No, I understand. You're looking at the closing lines, and the court's summarizing, and it says two things. One is it grants summary judgment to YS on the claims relating to the delay in the IEDs, right? So that's a clear statement that on that cluster of issues, YS's arguments carry the day. And then on the specific challenges that were to the 2020 IEP, the only one that's still alive is the PT, and that kind of depends, it's folded into this other thing. And so my guess is that people looked at that and thought, well, since they're limiting the remand as it relates to the October 2020 IEP to physical therapy services, that somehow subsumes or negates everything the court has just told us about remanding those other issues. Am I right that everybody seems to have a shared understanding before the SRO that the only issue on the table was the PT? I think that's right, and I think that's how it was addressed before the SRO. So the SRO has never addressed, if we believe that the district court remanded consideration of these other questions to the SRO, the SRO has never addressed them, namely the academic offerings and the SLC services in the October 2020 IEP as it relates to the delay in the IEDs. But I think, I mean, I think that's right, but I think the court looked at the scope of the October 2020 IEP. So part of that decision would correctly look at, okay, what was alleged in this due process complaint as to the deficiencies in the October IEP? And the only thing that was alleged that could reasonably be at issue was the PT services and not some deficiency in academic services or the deficiency in the bilingual SLT. Right, right. So here's where I think we're not having a meeting of the minds here. I grant you that defining the issue as the stated challenges to the October 2020 IEP, the district court said the physical therapy is the only issue that sort of got some legs there. But immediately before that, the court separately discussed a separate issue. And the separate issue was the delay in the sending of the notice of the IHO decision, which in turn delayed the IEDs. And the court specifically acknowledges that in the due process complaint, YS alleged that this failure rendered SF's IEP inadequate by obscuring YS's purported needs for certain academic interventions as well as bilingual SLT and PT services. And then the court said thus, we're compelled to reverse this determination and we're going to remand. We take no position on whether the delay constituted a procedural violation of the IDEA. So the court isn't conceding at that point that you get to the question of the impact on the October 2020 IEP. But if on remand it's found to be a procedural violation, that would be the next question is whether that delay affected the IEP. And then the next question after that is, did it thereby render the IEP inadequate? Why isn't that the right way to understand what the district court said? Because I think it looked at those other issues. So, for example, with respect to speech-language therapy, it looked at what the evaluation was and said, let me take it as a matter of substance anyway, even if this isn't time-barred. Even if there was an error here. And looked at that point in time as to speech-language therapy. And then deferred to the IHO's finding that there was not a denial of fate based on the absence of bilingual SLT. But that was very deliberate. The court very specifically defined that issue as backward-looking relative to the October 2020 fate. That was for 18-19 and 19-20 school years. And the court said that the conclusion that the evidence didn't support that that was a denial of a fate is supported by the evidence. The court didn't in that section purport to address SLT, the sufficiency of SLT in the October 2020. I want to say IEP, but it's not IEP. IEP, yes. And instead, in the context of this earlier issue, remanded. That issue is three findings away in the chain of what you have to get to to get to it. But it is still a live issue for the court, right? But the court specifically says we're going to remand for review. I know I said review, but it says we're going to remand. And then it awards summary judgment to YS on that claim. Yeah, I mean, I admit the summary judgment with regard to the exclusion, meaning that the court, the SRO, should have considered those allegations further. I guess the phrasing of granting summary judgment is a bit confusing, I guess, because it's saying, yes, we need to remand to consider that. The SRO was wrong to say it should have been raised separately. But as to whether the substance there requires further, anything further, I think the court looks at what were the actual allegations is and what was found. And as to the substance, again, I will note they all, you know, get before you get there. As to the substantive claims, there's also the question of what was time barred. But I'm going to put that aside for now and say if you look at the merits of assuming there could have been a delay, because I think the IHO looked at everything and there was a hearing where they looked at this issue on bilingual speech language therapy and said that it was reasonable, there's no denial of fate, just because the SLT was provided in English. I mean, this isn't a question of does this child need speech language therapy, do they not? It's just how, what language it was provided. We've got different time periods, right? Because we know in 2021 it did provide the bilingual speech and language therapy, right? So the evidence as to the child's needs or the conclusions might change over time. And I'm going to ask you, is it your position, and if so, can you point me where in the decision to look, that the district court addressed not the need for compensatory bilingual speech and language services for the 18, 19, and the 19, 20 years, but the need for bilingual speech and language therapy in the 2021 school year as dictated by the October 2020? I mean, did the court consider that issue? I think it did. I think that's where it deferred to the IHO as a whole, looking at whether there was any need at all for bilingual speech language therapy. So I understand there's a number of different issues here and layers of when you get to which issue, but I think because that issue was already fully addressed by the IHO, even though the SRO did not reach it, that is why the scope of the reband was limited to the PT. Here's why I'm struggling with your description. I'm looking at the heading. I know I use headings to try to be very clear about what I'm talking about. The heading of the discussion that you're referring to is the IHO's and SRO's determination as to SF's entitlement to bilingual speech language therapy services for the 2018, 19, and 2019, 2020 school years. And you're now telling me that that analysis also applies for the 2021 school year and the need to have included it in the October 2020 IME. I mean, I think it does, and I apologize that I need to look back at that specific heading to better explain why, but I think it looks at the issue in full. I think it's supported because the IHO looked at the issue in full, and I'm happy to take a closer look and provide a-  I'm sorry. I'm probably feeding a fed horse here, but- Sure. Let me just read you this statement from the court's discussion on the delay in the IE. It says it's going to remand. It says, to be clear, the court takes no position on whether the DOE's six-month delay in transmitting or otherwise acting on the February 2, 2020 order constitutes a procedural violation, or if it did, whether that delay interfered with SF's or YS's substantive rights under the act. The court remands these issues to the SRO to consider in the first instance. In your view, what issue did the court remand to the SRO with that statement, or was that statement negated by something the court said later without telling us that it was negating that? I mean, I think the opinion read as a whole says, look at this, and then also says the only issue that could possibly be lied is the PT. I grant that talking about things in different places leaves that- there's some confusion there, but that is certainly how the parties treated it. I believe that's how they briefed the issue on the remand and that the remand decision reflects that. So even if it could have been maybe read another way, I think then it was incumbent on YS to raise that before the SRO so that the DOE would likely disagree and point all this out. So I think read as a whole, and I take your point as the pieces that you're reading, that there was no need for remand as to the delay with respect to the other services. Can I ask you a question about the statute of limitations? Sure. The district court in your brief seemed to assume that because the IDEA sets a two-year limit, we're not adopting the state limitations, and so we don't use state tolling rules. But the statute we're actually applying, 1415-I keep getting these subsections wrong, so-B6b, says the time limit is you have to-you can bring a complaint for a violation that occurred not more than two years before, which is the two-year limit under the federal law. And then it says, quote, or if the state has an explicit time limitation in such time as the state allows. The state does. It happens to match. It happens to also be two years. But doesn't that statute mandate us to apply instead because the state, quote, has an explicit time limitation, the state's two years, which means that the state's tolling rules would apply? At least arguably the tolling rules. And the district court just flat-out said they don't. This is like Title VII, not like 1983. But it looks to me like they might. I certainly understand the argument here as compared to the other cases because, I mean, our position is obviously that it's stated in the federal statute. Because the federal statute says, okay, you can look to this, it's defined there, and so it's a federal standard. But granted, it is a bit of a different situation. I understand the argument that was not fully addressed, that because it's referring to state, you might argue, as my adversary did, argue that, no, you're applying to state here and tolling would apply. So let's assume, I guess I would disagree that it refers to the state. It actually says, if it has, apply that. So that sounds mandatory. So let's assume for the moment that the state two years applies instead of the federal two years. So what's the waiver argument that you make? That they did not raise it before the SRO. There's a footnote, I believe, in the closing. From the ISO, at least. Right. Right. But, I mean, there was a, I think it was a 37-page decision. I can't remember the number of enumerated issues. But they raised a number of issues. Now, the SRO found, as to speech-language therapy, that the latest it could have arisen was the date of the April 2020 remote learning plan. It's clear that finding was made, saying, okay, I don't have to figure out the exact date, because the latest it could possibly be was then. If they had raised the tolling argument and said, no, it's told, it's asked, that would be timely, then the parties would have had the opportunity to address why it's an earlier date or why the toll doesn't apply. They didn't, and it was their obligation to it. So the ISO's opinion implicitly rejects tolling by saying it's time-barred, and so they therefore should have pushed back on that in front of the SRO? Is that? Yeah. I mean, they were arguing that the claim wasn't time-barred. Right. So as part of that argument, if part of their argument that it wasn't time-barred was due to the COVID toll, then it was their obligation to raise it. Okay. Thank you. Thank you, Your Honor.  Attorney Cobb. Just on the last point that my opponent was mentioning for the waiver, the YS wasn't aggrieved by the point of tolling or the statute of limitations at the time of the petition to the SRO. The IHO had been interpreted as saying that the statute of limitations could have at latest arose September of 2020, which was well within the statute of limitations time period. And so the legal error there was simply that the IHO didn't recognize what the statute of limitations period was and shouldn't have found it time-barred. So tolling was never an issue unless DOE was going to raise it and say, no, the IHO was wrong about the date and should have picked this date. And then it would have been incumbent on us on reply to come back and say, well, tolling still applied, and that's what we argued to the IHO. And this was even one point that the district court came back and said that he didn't want to wade into it and didn't even want to get into it and still went on to talk about tolling in the statute of limitations and then unfortunately raised the error of not recognizing that the state law was incorporated into the IDEA as far as the executive orders. One of the other points with the exclusion of bilingual speech-language therapy is that I believe the district court was trying to come back and determine this as a matter of law and say that it simply wasn't the purpose of speech-language therapy in school to be able to have this additional service in the way that the parent was requesting it. And that itself would have been a legal error, and I believe that's why that wasn't remanded to the SRO at the time. Are there any cases, I mean, there is this back and forth. I gather that the theory for bilingual speech-language therapy is not that the child's progress in school is limited by the absence of the bilingual speech-language therapy. It's that the child's ability to engage with parents at home is limited by that. Is that, in my understanding, sort of the claim? Yes. So can you point me to the case law that would say, yeah, that's within the scope of the IDEA? It would be AM and LO, which were both in our briefing. And those are cases where this court came back and said it's what the consensus of the experts say. And that's essentially what we had after the IEE. And even the DOE came back and started to provide some bilingual speech-language therapy while they were trying to look for the non-public school at the tail end of the time period that we're having at issue here. And that's also one where, when we had the follow-on case, the one that the district court said, I don't really want to look at that IHO's decision, that IHO still said that they found a need, and the district didn't meet its burden of saying that bilingual speech-language therapy was no longer needed. So it does become a question of why would the district court say that, okay, it could have been a need in the subsequent school year. We had already brought up the exhibit that the IHO excluded about bilingual speech-language, well, about the student being Spanish-dominated prior to the time period. And what changed? And that was never explained for the DOE's burden of proof throughout the entire case. And it's something that the SRO didn't latch on to. It's something that the district court didn't look at. Can you tell me a little bit, you remind me what AM and LO say. What is it, the holding in those cases, that supports the conclusion that facilitating the child's communication at home is within the scope of the IDEA's responsibilities? AM is the one that I'm a bit more familiar with, and that is where all the way up to the procedural posture, the IHO, the SRO, and the district court all said that it was fine to not provide ABA to the student. And ABA was still supported by applied behavioral analysis. It's mainly for students with autism. And this became a primary issue that all of the experts still said that they agreed that this student needed ABA. And one after another, each adjudicator said that, well, we're going to go with what the DOE says. So in that case, it tells us something about burdens of proof and deferring to experts. I'm trying to get at the substantive law question, because the experts are evaluating whether somebody needs something with reference to whatever the needs to what end, right? So is there case law that sort of sheds light either way on this notion that somebody, if it's the conclusion that the student's in-school progress is not inhibited by the absence of a service, that the service would still be required by the IDEA to facilitate at home successful communications at home? Is there anything out there that I could look at that tells me about that? Because it seems like both sides are making assertions about that. I believe that the case law that we had cited in the briefing had instances where the at-home was more assumed. I don't believe that it was a direct statement that at-home services are specifically allowed, but I believe it was more to the effect of if it fits the child's unique needs. And that's really what the IDEA is about in all of its purposes, in the regulations, and even the one that we have quoted for Section 1400D1A, that it's about finding how to prepare the student for further education, employment, independent living. And you can't do any of that if you're focusing on what's the cookie cutter that the school district wanted to create and place the student in without making sure that they're fully learning it, that they're ready to go use these skills in the real world. And that's what Congress was trying to go up against when they created the IDEA. Thank you. That's helpful. I appreciate your evidence, both of you. We'll take this case under advisement. Thank you.